AO106(Rev 5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

Black Dell Laptop Computer, Model PP01L,
Service Tag Number 6CMLT11,
Seagate 40 GB Laptop Notebook Internal Hard Drive
Serial Number 1642961-001, Simpletech Remote
USB Digital Storage Device,
Serial Number SOCFJ10L230025.,
74 Unlableled CD/DVD Disks.
(Further described below)

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:

I ___John Marsh_____ being duly sworn depose and say:

I am a(n)___Investigator with the U.S. Attorney's Office_____ and have reason to believe
　　　　　　　　　　(Official Title)

that (name, description and or location)
　　　　within the above described computers and data storage devices

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)
　　　　images of child pornography

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
　　　　evidence, fruits and instrumentalities of violations of federal law

concerning a violation of Title_18_ United States Code, Section(s)_2252A_. The facts to support a finding of Probable
Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.　　　　YES ☐ NO

Patricia Stewart
Federal Major Crimes Section
(202)202-514-7064

_____
Signature of Affiant
,

Sworn to before me, and subscribed in my presence

_____
Date

at Washington, D.C.

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**
**FOR:**

**Black Dell Laptop computer, Model PP01L, Service Tag Number 6CMLT11; Seagate 40 GB laptop notebook internal hard drive, S/N 3KW1KQRT; white Micron Netframe 2101 computer, S/N 1642961-001; Simpletech remote USB digital storage device with 100GB Samsung hard drive, S/N SOCFJ10L230025; 74 unlabeled CD/DVD disks.**

I, John Edward Marsh, depose and state the following:

1.  I have been employed as a Criminal Investigator of the United States Attorney's Office, since September 2003, and have approximately 20 years law enforcement experience including reaching the rank of Detective Sergeant with the United States Park Police. I have experience in vice-related investigations and have participated in over 2000 arrests. I have gained expertise in the conduct of computer-based crime investigations through formal training and on-the-job training with more experienced agents. I have been involved in investigations of violent crime, white collar crime, cyber-crime, including online enticement of minors, and child pornography offenses. I have gained experience conducting such investigations through training and everyday work related to these investigations.

2.  I respectfully submit this affidavit in support of an application for a warrant to search a black Dell Laptop computer, Model PP01L, Service Tag Number 6CMLT11; Seagate 40 GB laptop

notebook internal hard drive, S/N 3KW1KQRT; white Micron Netframe 2101 computer, S/N 1642961-001 and related data store devices specifically a Simpletech remote USB digital storage device with 100GB Samsung hard drive, S/N SOCFJ10L230025 and 74 unlabeled CD/DVD disks. ("SUBJECT COMPUTERS AND STORAGE DEVICES") that are now in the custody of the Metropolitan Police Department and are located at the offices of the United States Attorney, 555 4th Street, N.W., Washington, D.C.

3.    For the reasons set forth in this affidavit, there is probable cause to believe that Frank Edward Robinson unlawfully possessed child pornography at 828 18th Street, N.W., apartment B, within the District of Columbia in violation of Title 18, United States Code, Section 2252A, and that there presently is located in the SUBJECT COMPUTERS AND STORAGE DEVICES evidence, fruits, and instrumentalities of that offense, as described in Attachment A.

## FACTS AND CIRCUMSTANCES

4.    The statements in this affidavit are based in part on information provided by other law enforcement agents including Metropolitan Police Department detectives and on my experience and training as an Investigator for the United States Attorney's Office. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to

establish probable cause to believe that evidence, fruits, and
instrumentalities of the violations of Title 18, United States
Code, Section 2252A (possession of child pornography)
pornography) are presently located within the SUBJECT COMPUTERS
AND STORAGE DEVICES.

5.    This affidavit is organized as follows:  Paragraphs 6
and 7 provide relevant statutory authority.  Paragraph 8 provides
definitions of terms used throughout the balance of this
Affidavit.  Paragraphs 9 through 11 provide background
information concerning the use of computers and the internet
generally and with respect to child pornography.  Paragraphs 12
through 18 discuss the characteristics of collectors of child
pornography.  Paragraphs 20 through 26 discuss this investigation
and the factual basis for my opinion that there is probable cause
to believe that evidence of the possession of child pornography
is contained within the SUBJECT COMPUTERS AND STORAGE DEVICES.
Paragraphs 27 through 32 request permission to search the SUBJECT
COMPUTERS AND STORAGE DEVICES and describe the methods of that
search.

### STATUTORY AUTHORITY

6.    This investigation concerns alleged violations of Title
18, United States Code, Section 2252A(a)(1) - certain activities
relating to material involving the sexual exploitation of minors.

7.    The relevant statutory text for purposes of this

-3-

Affidavit are:

      a.    Title 18, United States Code, Section

2252A(a)(5(B) states:

> Any person who . . . knowingly possesses any book,
> magazine, periodical, film, videotape, computer disk,
> or any other material that contains an image of child
> pornography that has been mailed, or shipped or
> transported in interstate or foreign commerce by any
> means, including by computer, or that was produced
> using materials that have been mailed, or shipped, or
> transported in interstate or foreign commerce by any
> means, including by computer;. . . shall be punished as
> provided in subsection (b).

      b.    Title 18, United States Code, Section

2256(2)(A)defines "sexual explicit conduct," as "actual or

simulated":

> (i) sexual intercourse, including genital-genital,
> oral-genital, anal-genital, or oral-anal, whether
> between persons of the same or opposite sex;
> (ii) bestiality;
> (iii) masturbation;
> (iv) sadistic or masochistic abuse; or
> (v) lascivious exhibition of the genitals or pubic area
> of any person.

      c.    Title 18, United States Code, Section 2256(8)
defines "child pornography" as

any visual depiction, including any photograph, film, video,
picture, or computer or computer-generated image or picture,
whether made or produced by electronic, mechanical, or other
means, of sexually explicit conduct, where-

      (A) the production of such visual depiction involves
the use of a minor engaging in sexually explicit conduct;

      (B) such visual depiction is a digital image, computer
image, or computer-generated image that is, or is
indistinguishable from, that of a minor engaging in sexually
explicit conduct; or

-4-

(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

## **DEFINITIONS**

8.    The following terms have the indicated meaning in this affidavit:

a.    The term "minor," "sexually explicit conduct," and "visual depiction," as used herein, are defined as set forth in Title 18, United States Code, Section 2256.

b.    The term "child pornography," as used herein, is defined as set forth in Title 18, United States Code, Section 8, and means any visual depiction of a minor involved in "sexually explicit conduct" as that term is defined in Title 18, United States Code, Sections 2256(8)(A) and (C).

c.    The term "computer," as used herein, is defined as set forth in Title 18, United States Code, Section 1030(e)(1).

d.    The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, paintings), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic

-5-

or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), cell phones, Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bemoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

### USE OF COMPUTERS WITH CHILD PORNOGRAPHY

9.    I have received training in computer crime investigation.  I also own a computer and use computers in the course of my work in law enforcement and have personal knowledge regarding the operation of computers.  Based on this training, experience, and information provided to me by other law enforcement personnel involved in this investigation, I know the following:

a. The Internet is a global network which allows for the sharing of data across computers attached to the network.

b.    Individual users typically access the Internet through a local Internet Service Provider ("ISP")(such as America Online, or "AOL") through a modem or other connection device, such as a cable or Digital Subscriber Line ("DSL").  When accessing the Internet, the ISP will assign each user an Internet

Protocol ("IP") address, a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet.  IP addresses can also be static, whereby the user's ISP assigns the computer a unique IP address, and that same number is used by the user every time the computer accesses the Internet.

c.    Communication via the Internet can take place through many different mediums like accessing a website or sending and receiving electronic mail, also known and referred to herein as "e-mail."  E-mail is an electronic form of communication which can contain letter-type correspondence and graphic images.  E-mail is similar to conventional paper type mail in that it is addressed from one individual to another.

d.    E-mail messages usually contain a header that gives the screen name, the identity of the Internet access provider, and the return address on the Internet of the individual who originated the message or graphic.

e.    The Internet also allows individuals to trade pictures or images, often through e-mail or by downloading images from a website or another individual's computer, as described below.

(1)    Photographs and other images can be stored as data on a computer.  This storage can be accomplished

-7-

using a "scanner," which is an optical device that can recognize images or characters on paper and convert them to digital form by using specialized software.

(2)    After the photograph or other image has been scanned into the computer, the computer stores the data from the image as an individual "file."  Such a file is generally known as a "GIF" (Graphic Interchange Format) or "JPEG" (for the Joint Photographic Experts Group, which wrote the standard) file, recognizable by the ".gif" or ".jpg" file extensions (hereafter referred to as an "image file").

(3)    Computers are capable of displaying an image file as a facsimile of the original image on a computer screen.

(4)    Using a computer connected to a network connected to the Internet, one can transmit and receive image files between computers located in different states or countries.

(5)    An image file itself can be either a single image (one picture only, also known as a computer file), or a multiple image file (two or more pictures, usually "zipped" or compressed using a commonly available utility and recognizable by the ".zip" file extension).  Multiple image files can also be placed within an executable file (recognizable by the ".exe" file extension).  When a computer runs the executable file the images can be expanded into several image files.

-8-

(6)    A computer's ability to store images in digital form makes the computer an ideal repository for child pornography.  Images can be stored internally in a computer on its "hard drive," externally on "floppy" disks of several sizes and capacities, or on removable media storage devices.  A single floppy disk can store dozens of images and hundreds of pages of text.  The storage capacities of the electronic storage media (hard drives and floppy disks) used in home computers have grown tremendously within the last several years.  Hard drives with the capacity of a hundred gigabytes are common.  These drives can store tens of thousands of images at a very high resolution. These images can also be stored on the computers of an Internet company hosting the particular website.

(7)    With a modem, a computer user can transport an image file from the Internet or from another user's computer to his own computer, so that the image file is stored in his computer.  The process of transporting an image file to one's own computer is called "downloading."  The user can then display the image file on his computer screen, and can "save" or retain the images on his computer for an indefinite time period.

(8)    In addition to permanently storing the downloaded image on his computer, the user may print the image file.  The finished product can appear as a magazine quality picture to be stored or distributed to other collectors.  The

original image that was downloaded or transported is maintained in the computer.

(9)  With a modem, a computer user can also send an image file that is retained in his computer to another individual or to areas of the Internet where it can be accessed by many other computer users.  This process of sending an image file is called "uploading."

(10)  The process of "uploading" is similar to the "downloading" process except the user is sending the computer image file to the individual or to the Internet as a whole instead of retrieving the information from another computer.

f.    Another well-known component of the Internet is the World Wide Web, or the "Web."  The Web is a collection of websites located or stored on different computers throughout the world.  Each website is identified by a unique Uniform Resource Locator ("URL"), which identifies the server on which the website information is stored.  Users access websites by typing the corresponding URL into their web browser.

**USE OF THE INTERNET AND COMPUTERS FOR CHILD PORNOGRAPHY**

10.    Based on my training, experience and conversations with other law enforcement agents, I know that computers, computer technology and the Internet have revolutionized the way in which child pornography is produced, distributed, utilized and

-10-

collected.  They have revolutionized also the way in which child
pornography collectors interact with each other.  Child
pornography formerly was produced using cameras and film (either
still photography or movies).  The photographs required darkroom
facilities and a significant amount of skill in order to develop
and reproduce the images.  As a result, there were significant
costs involved with the production of pornographic images.  To
distribute these images on any scale also required significant
resources.  The photographs were somewhat bulky and required
secure storage to prevent their exposure to the public.  The
distribution of these wares was accomplished through a
combination of personal contact, mailings, and telephone calls.
Any reimbursement would follow these same paths.

    11.  The development of computers and the Internet has added
to the methods used by child pornography collectors to interact
with and sexually exploit children and to produce and distribute
child pornography.  Computers and the Internet generally serve
four functions in connection with child pornography.  These are:
production, communication, distribution, and storage.

        a.  Child pornographers now can produce both still and
moving images directly from a common video camera.  The captured
images can be edited in very similar ways to a photograph.  The
image can be lightened, darkened, cropped, and manipulated in a
wide variety of ways.  The producers of child pornography can

-11-

also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store and distribute child pornography. Further, it is more difficult for law enforcement to detect and investigate child pornography produced with this new technology, as opposed to methods used in the past, which required more elaborate and detectable equipment and facilities.

b.    Previously, child pornography collectors had to rely on personal contact, United States mail, and telephonic communications in order to sell, trade or market pornography. The development of computer technology has changed that. A modem allows any computer to connect to another computer through the use of telephone lines. By connecting to a host computer, electronic contact can be made to numerous other computers around the world. Once this electronic contact is established, there are numerous outlets and ways that child pornography can be distributed over the Internet.

c.    Private and/or public Internet relay chat ("IRC") channels can be and are created for the purpose of sharing child pornography. A user can log onto the IRC anonymously and "chat" and/or trade child pornography with other users, either on an individual or group basis. During this type of session no identifying personal information is obvious or available. The

-12-

only identifiable or traceable information is the individual's IP address or ISP.  IRC chat rooms are one place where pornographers meet to trade child related sexual and non-sexual stories and trade child pornography.  In addition, "chat rooms" on ISPs like AOL can be and are created for similar purposes.  Both types of chat rooms are places where children may be at risk of being "lured."

          d.    Aside from the chat rooms that reside on many service providers' networks, ISPs often allow access to "newsgroups."  Newsgroups resemble a bulletin board system where an individual can post messages along with graphic files on a public forum.  Any item posted in a news group can be retrieved by any other person who has access to that particular newsgroup. One commonality between a newsgroup posting and e-mail is that they each often contain a message "header" that gives information about the account that originated a particular message and/or graphic files, and the return address to respond to the poster/sender.

          e.    Internet websites also can be used to facilitate the exchange of child pornography.  A website can house child pornography directly, allowing users who access the website to view and download those images.  A website can also house an "Egroup," which is a forum by which persons with shared interests in child pornography can interact in relative privacy.

-13-

Typically, most Egroups will have a moderator, and membership in the group can be open or by invitation only.  The members of an Egroup also typically communicate with each other by sending an e-mail to the group, which is disseminated to all of the members.  In addition, each Egroup typically has a web page that the group's members can visit to view archived postings.  E-mail messages and postings might include files that contain visual depictions and digital video clips.

       f.   These communication structures are ideal for the child pornography collector.  The open and anonymous communication allows the user to locate others of similar inclination and still maintain anonymity.  Once contact has been established, it is possible to send text messages and graphic images to others.  Moreover, the child pornography collector need not use the large service providers.  Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute pornography.  These communication links allow contacts around the world as easily as calling next door.  Additionally, these communications can be quick, relatively secure, and as anonymous as desired.  All of these advantages are well known and are the foundation of transactions between child pornography collectors.

g.    The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution of child pornography.  For example, child pornography can be transferred (via electronic mail, through file transfer protocols("FTPs")[1] , or via newsgroup postings) to anyone with access to a computer and modem.  Because of the proliferation of commercial services that provide electronic mail service, chat services, and easy access to the Internet, the computer is a preferred method of distribution of child pornographic materials.

h.    The computer's capability to store images in digital form makes it an ideal repository for pornography.  A single floppy disk can store dozens of images and hundreds of pages of text.  The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years.  Hard drives with the capacity of 100 gigabytes are not uncommon.  These drives can store thousands of images at very high resolution. Further, magnetic storage located in host computers allows child pornographers to hide pornographic images from law enforcement.

_____

[1]    An FTP is a protocol that defines how to transfer files from one computer to another.  One use, known as "anonymous FTP," allows users who do not have a login name or password to access certain files from another computer, and copy those files to their own computer.

It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and to save that image to storage on a host computer in another country. Only careful laboratory examination of electronic storage devices can recreate the evidence trail.

### CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

12.   Based on my training and experience and conversations that I have had with federal agents and law enforcement officers who conduct investigations involving child pornography, I know that child pornography is not readily available in retail establishments.  Accordingly, individuals who wish to obtain child pornography do so usually by ordering it from abroad or by discreet contact, including through the use of the Internet, with other individuals who have it available or by accessing web sites containing child pornography.  Child pornography collectors often send and receive electronic mail conversing with other collectors in order to solicit and receive child pornography.

13.   I know that child pornography collectors usually maintain and possess their materials (computer images, pictures, films, magazines, videotapes, correspondence, source information, etc.) in a private secure location such as their home, office, or work space.  Images or videos taken off of the Internet are often stored in the hard drive of the computer or on diskettes kept in private locations near the computer such as in locked desks,

-16-

shelves, contiguous work space, filing cabinets or similar items and areas in office space. These images also can be printed on computer printers and maintained by child pornography collectors in paper form. Additionally, child pornography collectors often transfer those images to videotape, either by videotaping with a handheld video camera the images or videos on a computer screen, or by connecting a video cassette recorder to the computer and recording the images or videos directly.

14. Collectors of child pornography typically retain their materials and related information for many years. Most collectors of child pornography seek to increase the size of their collections in a manner similar to collectors of coins, stamps, or rare books. Many retain these materials, including information regarding sources, for their entire adult lives. Moreover, individuals who distribute and/or collect child pornography generally prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. In addition, collectors of child pornography rarely destroy correspondence from other collectors or distributors unless their activities are uncovered by law enforcement authorities or others.

-17-

15.  Even if a collector of child pornography images
attempts to delete images from his computer, however, for
example, by moving them to the "Recycle Bin" of a computer, those
images usually remain intact on the hard drive of a computer,
often for a long period of time, because information on a hard
drive is not destroyed until it is physically overwritten with
other data or erased from the hard drive.  As a result, even when
a computer user thinks he or she has deleted data, in reality it
usually remains on the computer and is recoverable.

16.  Accordingly, information in support of probable cause
in child pornography cases is less likely to be stale because
collectors and traders of child pornography are known to store
and retain their collections for extended periods of time,
usually in their home.  Indeed, as noted above, based on my
experience with child pornography search warrants, I know that
even where information about a suspect's use of child pornography
is not current, we typically find child pornography at the
location of the search, assuming the suspect still resides there.

17.  I know from my experience and training that persons who
engage in actual sexual contact with children frequently collect
child pornography because they derive sexual gratification from
viewing images of children engaging in sexual activity.

18.  Additionally, based on my experience and training, I
know that persons who collect and distribute child pornography:

-18-

a.    Frequently collect sexually explicit materials in a variety of media, such as photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media that they use for their own sexual arousal and gratification.  Further, they commonly use this type of sexually explicit material to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, and to demonstrate the desired sexual acts.

b.    Frequently receive sexual gratification, stimulation, and satisfaction from actual physical contact with children and/or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (in person, in photographs, or other visual media) or from literature describing such activity.

c.    Often correspond and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, telephone numbers and screen names of individuals with whom they have been in contact and who share the same interests in child pornography.

19. Based on my training and experience and my conversations with other members of ICE, I have also learned that:

-19-

a.    Child pornography is a permanent record of the sexual abuse of a child victim.  Each time child pornography is reproduced, downloaded, or forwarded by an Internet user, the victimization of the minor appearing in the pornography is perpetuated.  Such items also are important evidence and indications of an individual whose sexual objects are children, and of that individual's motive, intent, and predisposition to violate federal law related to the production, possession and distribution of child pornography.  Additionally, these items lead to the identification of child victims and other individuals engaging in similar conduct.

b.    Child pornography collectors reinforce their fantasies, often by taking progressive, overt steps aimed at turning the fantasy into reality in some or all of the following ways:  collecting and organizing their child-related material; masturbating while viewing the child pornography; engaging children, online and elsewhere, in conversations, sometimes sexually explicit conversations, to fuel and fortify the fantasy; interacting, both directly and indirectly, with other like-minded adults through membership in organizations catering to their sexual preference for children thereby providing a sense of acceptance and validation within a community; gravitating to employment, activities and/or relationships which provide access or proximity to children; and frequently persisting in the

-20-

criminal conduct even when they have reason to believe the
conduct has come to the attention of law enforcement.  These are
need-driven behaviors to which the offender is willing to devote
considerable time, money, and energy in spite of risks and
against self interest.  The "collection" is the best indicator
that law enforcement has of what the collector *wants* to do, not
necessarily what he has done or will do.  The overriding
motivation for the collection of child pornography may be to
define, fuel, and validate the collectors' most cherished sexual
fantasies involving children.

## THE INVESTIGATION AND THE SUBJECT COMPUTERS AND STORAGE DEVICES

20.  For the reasons set forth below, there is probable
cause to believe that evidence of possession of child pornography
will be located within the SUBJECT COMPUTERS AND STORAGE DEVICES.

21.  I have been assisted in this investigation by other law
enforcement agents, with whom I have discussed this investigation
and the information contained herein.

22.  On February 25, 2008, a witness, ("W-1")contacted the
District of Columbia Child and Family Services Hotline and
advised that her three year-old daughter ("W-2") disclosed to her
that her "daddy" touched her genital area. W-2 refers to Frank
Edward Robinson as her "daddy". On the same date W-2 was
interviewed at the District of Columbia Child Advocacy Center by
a forensic interviewer. The child disclosed that Robinson touched

-21-

her unclothed genital area, and pointed to her vagina in describing the incident. During the initial disclosure to W-1, W-2 described the incident as Robinson's playing with her genital area "like a milkshake" and made a stirring motion with her finger in the area of her vagina.

23. Investigation determined that Frank Edward Robinson has lived with W-1 and W-2 for approximately three years and that he is a registered sex offender in the District of Columbia having been convicted in the State of Maryland of a sex offense involving a 14 year-old female.

24. Investigators have learned from W-1 that in the latter half of 2007, Frank Edward Robinson brought a laptop computer to the residence he shared with W-1 and W-2. W-1 had use of the computer. W-1 reported that at various times, continuing at least until October 2007, W-1 observed Frank Edward Robinson viewing on the laptop computer images that appeared to W-1 to be images of child pornography. The images included:

a. A video depicting an adult male engaging in vaginal intercourse with a prepubescent female who appeared to be approximately nine years-old;

b. A video of an adult female engaging in sex acts with teenage boys who appeared to be approximately 15 to 16 years-old;

c. Images of adult men engaging in sex acts with girls who appeared to be 15 to 16 years-old.

-22-

25. On February 26, 2008, Metropolitan Police officers and United States Attorneys Office Investigators arrested Frank Edward Robinson on charges of Second Degree Child Sexual Abuse pursuant to a warrant issued by Judge of the Superior Court of the District of Columbia. Robinson came to the back door of the apartment located at 818 18th Street NE, Apartment B, where he lived with W-1 and W-2 and opened the door for the officers. No one other than Robinson was in the apartment at that time.  The apartment appeared to be in disarray as if someone had rummaged through all areas of the apartment.  Robinson volunteered that he was moving things out.  A computer laptop was visible in a crib that was positioned near the back door with other bagged items. The laptop peripheral drives were removed from the laptop.

26.  On February 26, 2008, shortly after Robinson's arrest, W-1 consented to a search of her apartment where she resided with Frank Edward Robinson and to officers taking custody of the property described in this affidavit. Officers removed the computer and related data storage devices and secured them at that time pending application for a warrant authorizing the search of the items.  It was apparent to officers taking custody of the items that Robinson had taken both the computer laptop and removable digital storage device apart in an attempt to destroy them prior to the officers' arrival at the scene.

**REQUEST TO SEARCH THE SUBJECT COMPUTERS AND STORAGE DEVICES**

27. In light of the foregoing information, and based on my experience and training, I submit that there is probable cause to believe that the SUBJECT PROPERTY contains child pornography or other evidence concerning violations of Title 18, United States Code, Section 2252A(a)(5), and that the fruits and instrumentalities of those violations can be found in the SUBJECT COMPUTERS AND STORAGE DEVICES. Specifically, the SUBJECT COMPUTERS and computer equipment are likely to be the primary means of accessing the Internet for purposes of collecting child pornography and therefore may be seized "as the means of committing [the] criminal offense" pursuant to Federal Rule of Criminal Procedure 41(b)(3). The CD/DVD data storage devices are likely vehicles for the storage of material obtained from the Internet, including images of child pornography. The evidence, fruits, and instrumentalities of the offenses include the items described in Attachment A, attached hereto.

## METHODS TO BE USED TO SEIZE AND SEARCH COMPUTERS AND COMPUTER-RELATED EQUIPMENT IN THE PREMISES

28. Based upon my training, experience, and information related to me by agents and others involved in the forensic examination of computers and other electronic media, I know that electronic data can be stored on a variety of systems and storage devices including hard disk drives, floppy disks, compact disks, magnetic tapes, and memory chips. I also know that searching

-24-

computerized information for evidence or instrumentalities of a crime commonly requires agents to seize most or all of a computer system's input/output peripheral devices, related software documentation, and data security devices (including passwords), so that a qualified computer expert can accurately retrieve data from the system or phone in a laboratory or other controlled environment.  This is true for the following reasons:

　　　　a.　　Searching computer systems is a highly technical process which requires specific expertise and specialized equipment.  There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search.  In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application, or operating system that is being searched.

　　　　b.　　Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data.  Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is

-25-

essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

c.    The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data on the premises where the computer is located.  A single megabyte of storage space is the equivalent of 500 double-spaced pages of text.  A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text.  Storage devices capable of storing up to 100 gigabytes of data are now commonplace in desktop computers.  Consequently, each non-networked, desktop computer found during a search can easily contain the equivalent of millions of pages of data.

d.    Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions.  For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text.  Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form.  In addition, computer users can conceal data within another seemingly unrelated and innocuous

-26-

file in a process called "steganography."  For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened.  Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband, or instrumentalities of a crime.

29.  In searching for data capable of being read, stored, or interpreted by a computer, law enforcement personnel executing the applicable Search Warrant will employ the following procedure:

The analysis of electronically stored data may entail any or all of several different techniques.  Such techniques may include, but shall not be limited to, surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files); "opening" or reading the first few "pages" of such files in order to determine their precise contents; "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and performing electronic "key-word" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to the subject matter of the investigation.

-27-

30.  Any data that is encrypted and unreadable will not be
returned unless law enforcement personnel have determined that
the data is not (i) an instrumentality of the offense, (ii) a
fruit of the criminal activity, (iii) contraband, (iv) otherwise
unlawfully possessed, or (v) evidence of the offense specified
above.

31.  In searching the data, the computer personnel may
examine all of the data contained in the computer, computer
equipment and related storage devices to view their precise
contents and determine whether the data falls within the items to
be seized as set forth herein.  In addition, the computer
personnel may search for and attempt to recover "deleted,"
"hidden," or encrypted data to determine whether the data falls
within the list of items to be seized as set forth in this
affidavit.

32.  If the computer personnel determine that the computer,
computer equipment and storage devices are no longer necessary to
retrieve and preserve the data, and the items are not subject to
seizure pursuant to Federal Rule of Criminal Procedure 41(b), the
Government will return these items.

32.  In order to search for data from computers, computer
equipment and storage devices, law enforcement personnel will
need to seize and search the following items, subject to the
procedures set forth above:

-28-

a.    any computers, computer equipment, and storage device capable of being used to commit, further or store evidence of the offense listed above;

b.    any computers and computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

c.    any magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants;

d.    any documentation, operating logs, and reference manuals regarding the operation of the computer equipment, storage devices, or software;

e.    any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

f.    any physical keys, encryption devices, dongles, and similar physical items that are necessary to gain access to the computer equipment, storage devices, or data; and

-29-

g.    any passwords, password files, test keys, encryption codes, or other information necessary to access the cell phones, computer equipment, storage devices, or data.

32.    In addition, law enforcement personnel will need to seize and search any device that can capture or store a photographic or video image.

### CONCLUSION

33.    Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that Frank Edward Robinson has violated Title 18, United States Code, Section 2252A(a)(5), and that Robinson has used the SUBJECT COMPUTERS AND STORAGE DEVICES to violate Section 2252A(a)(5).

34.    Given the propensity of child pornography collectors to maintain and increase the number of images in their collections, your affiant believes that evidence, fruits and instrumentalities of violations of Title 18, United States Code, Section 2252A(a)(5), listed in Attachment A to this Affidavit, which is incorporated herein by reference, are located within the SUBJECT COMPUTERS AND STORAGE DEVICES. Rule 41 of the Federal Rules of Criminal Procedure authorizes the government to seize and retain evidence and instrumentalities of a crime for a reasonable time, and to examine, analyze, and test them.

35.    Based upon my knowledge, training and experience, and consultations with other law enforcement officers and forensic

-30-

experts, I know that searching and seizing information from
computers often requires agents to seize most or all electronic
storage devices (along with related peripherals) to be searched
later by a qualified computer expert in a laboratory or other
controlled environment.

    36.  Your affiant, therefore, respectfully requests that the
attached warrants be issued authorizing the search and seizure of
the items listed in Attachment A.

 

Sworn and subscribed before me
this ____ day of February 2008

    JOHN E. MARSH
    Investigator
    U.S. Attorney's Office
    District of Columbia

_____

_

ALAN KAY
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**
**ITEMS TO BE SEARCHED**

A.  Images of child pornography and files containing images of
    child pornography in any form wherever it may be stored or
    found including, but not limited to:

    i.   lapton computer described herein, computer system and
         related peripherals; tapes, cassettes, cartridges,
         streaming tape, commercial software and hardware,
         computer disks, disk drives, monitors, computer
         printers, modems, tape drives, disk application
         programs, data disks, system disk operating systems,
         magnetic media floppy disks, hardware and software
         operating manuals, tape systems and hard drive and
         other computer related operation equipment,  scanners,
         monitors, printers, external storage devices, routers,
         modems, computer photographs, Graphic Interchange
         formats and/or photographs, Graphic Interchange formats
         (including, but not limited to, JPG, GIF, TIF, AVI, and
         MPEG), and any electronic data storage devices
         including, but not limited to hardware, software,
         diskettes, backup tapes, CD-ROMS, DVD, Flash memory
         devices, and other storage mediums; any input/output
         peripheral devices, including but not limited to
         passwords, data security devices and related
         documentation, and any hardware/software manuals
         related to or used to: visually depict child
         pornography; contain information pertaining to the
         interest in child pornography; and/or distribute,
         receive, or possess child pornography, or information
         pertaining to an interest in child pornography, or
         information pertaining to an interest in child
         pornography;

      ii. Motion pictures, films, videos, and other recordings of
    visual depictions of minors   engaged in sexually explicit
    conduct, as defined in 18 U.S.C. § 2256;

    B.   information, correspondence, records, documents or
         other materials pertaining to the possession, receipt
         or distribution of visual depictions of minors engaged
         in sexually explicit conduct, as defined in 18 U.S.C. §
         2256, that were transmitted or received using computer,
         including, but not limited to:

i.    correspondence including, but not limited to,
electronic mail, chat logs, and electronic messages,
establishing possession, access to, or transmission
through interstate or foreign commerce by computer, of
visual depictions of minors engaged in sexually
explicit conduct, as defined in 18 U.S.C. § 2256; and

ii.   any and all records of Internet usage including user
names and e-mail addresses and identities assumed for
the purposes of communication on the Internet.  These
records may include billing and subscriber records,
chat room logs, e-mail messages, and include electronic
files in a computer and on other data storage mediums,
including CDs or DVD